## MORROW, BECKER & EWING, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6333.

Circuit Court of Appeals, Fifth Circuit.

March 29, 1932.

Rehearing Denied May 3, 1932.

P. Robert G. Sjostrom and Crate D. Bowen, both of Miami, Fla., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Nathan Gammon, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

The Commissioner of Internal Revenue determined deficiencies in income taxes against petitioner of $3,539.74 and $624.91 in the respective years of 1925 and 1926. On appeal the Commissioner was affirmed by the Board of Tax Appeals. 21 B. T. A. 1013. The findings of facts do not exhibit the precision and completeness usually found in decisions of the Board, and are unsatisfactory in that respect. However, we may refer to them for the facts more in detail, repeating in the course of the opinion only those necessary to be considered.

It appears that petitioner was incorporated under the laws of Florida on February 24, 1925, for the purpose of acquiring, developing, and selling a tract of land in Miami, containing 73 acres. It laid out streets and subdivided the property into 361 building lots of various sizes, ranging from approximately 40 by 60 to 50 by 150 feet. All the lots were sold in 1925 in the period from March to June, 26 for cash, 25 or 30 on terms, with mortgages back, and the rest of them on an installment plan, the deferred payments evidenced by promissory notes, and the deeds to be delivered to the purchasers upon completion of the payments. The contract provided that all taxes and assessments thereafter imposed were to be paid by the purchaser. In the majority of sales the initial payment did not exceed one-fourth of the sales price. By August, 1925, land prices in the vicinity of the subdivision began to drop. By September some

of the purchasers had defaulted in interest payments, and some had failed to pay taxes, which became payable in November. There were defaults on 62 contracts up to December 21, 1925, and on 205 contracts up to December 31, 1926. Only 44 lots sold on contract or mortgage, slightly over 13 per cent., were paid out. Petitioner filed a return for 1925 on March 15, 1926. In doing so it lumped the sales, returned gross sales as one item, made deductions based on the transaction considered as a whole, and paid a tax of $35,013.43.

The Revenue Act of 1926 became effective on February 26 of that year. Section 212 (d), 26 USCA § 953 (d) (retroactive under the provisions of Section 1208 [26 USCA § 953a]) made substantial changes in the existing law as to the basis for determining profits and losses on sales of real property in which the initial payments did not exceed one-fourth of the purchase price, to be returned under regulations prescribed by the Commissioner, with the approval of the Secretary of the Treasury. While the act became effective a few days before the initial return was made, Regulations 69 adopted for its administration were not approved until August 28, 1926, some months thereafter. Articles 43, 44, 45 and 46 of these regulations made substantial changes in the method of making returns.

In December, 1926, petitioner filed an amended return for the year 1925 in which it attempted to follow the new regulations. This return showed a net loss of $20,874.07 for 1925. In this amended return petitioner claimed a deduction of $10,000 as a reserve for operating the subdivision. This was the estimated cost of maintaining water supply and lighting systems in the subdivision until such time as it might be taken over by the city of Miami. The water system was installed and water was supplied for the purchasers of lots. A lighting plant was also installed, but light was not furnished to the purchasers owing to the destruction of the plant by a storm before its completion.

The return for 1926 was made on the same basis, and claimed a deduction for a net loss of $20,874.07, for the year 1925. The return for 1926 also claimed the following deductions: $15,000 for state and county taxes on repossessed property and $36,277.43, an amount set up to cover legal expenses and court costs in repossessing the property.

The Commissioner disallowed all these deductions and refused to accept and consider the amended return for 1925.

The most important question to be considered is whether the notes given pursuant to the installment and deferred payment sales contracts had any market value. The Commissioner held that the mortgages had the value of the cost of the land. The Board found that the contracts had no fair market value at the close of the years 1925 and 1926, but the findings are silent as to the notes. The Board also found that the value of the land was dropping as early as September, 1925. The judgment affirming the Commissioner and the opinion in support thereof are inconsistent with these findings. The notes were part of the contracts, and, by necessary implication, if the contracts had no market value, neither had the notes.

The Board failed to find whether petitioner kept its books on the accrual or cash basis. The opinion recites that petitioner's secretary testified that the books were kept on the cash receipts and disbursements basis, and also that it had not been established to the Board's satisfaction that petitioner's books were kept on any other basis. The petition appealing the determination on the 1926 return alleged the books were kept on the accrual basis. The answer denied this. It would seem the Board should have made definite findings on this point.

The opinion recites that one witness testified that light and water had been promised to the purchasers of the land. This was sufficient to establish a legal obligation on the part of petitioner to furnish them, as there is a strong presumption that such an obligation exists where a subdivision of that size is laid out and lots are sold for building purposes. It would also seem that the taxes paid and the legal expenses for repossessing the property were deductible expenses. However, we are not prepared to say that the Board was wrong in upholding the refusal of the Commissioner to allow these deductions, in view of the fact that it is not shown upon what basis the books were kept and whether anything in that regard had been paid out in 1925 or 1926.

While there is no statutory authority for an amended return, amended returns are frequently permitted, and they are sometimes required by the Commissioner. In fact, the Commissioner has authority to make them when a taxpayer neglects or declines to do so. The case presented is not one where, the law being well settled, the taxpayer had

elected to keep his books on a certain basis and to make returns accordingly and had afterwards attempted to change the method of accounting or the basis of the return. In that case it would, of course, be proper to hold him estopped, as an orderly administration of the revenue laws would be otherwise impossible. In this case the Commissioner put his refusal to allow the amended return on the ground that petitioner had chosen the installment basis for reporting profits and could not change. This gave no effect to changes in the law and regulations occurring afterwards. In view of the radical changes in the law, of which the petitioner had scant notice, if any, in fairness and justice to the taxpayer the returns should have been received and considered: Taxes are assessed on income and not on honest mistakes of the taxpayer. It was the duty of the Commissioner to do nothing arbitrary or unreasonable that would deprive petitioner of rights created by the new law and the regulations thereunder. It was a breach of discretion on the part of the Commissioner not to receive the amended return from 1925 under the circumstances disclosed.

From what has been said above it follows that the facts found by the Board do not support the decision. The record before us is not sufficient to permit an attempt to reaudit the returns.

The petition is granted. The judgment is reversed, and the case is remanded to the Board of Tax Appeals for further proceedings not inconsistent with this opinion.