## C. H. MEAD COAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4469.

Circuit Court of Appeals, Fourth Circuit.

Aug. 28, 1939.

Edgar J. Goodrich, of Washington, D. C. (Guggenheimer & Untermyer, of Washington, D. C., on the brief), for petitioner.

Ellis N. Slack, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and H. H. WATKINS, District Judge.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals involving a deficiency in income taxes of the petitioner, C. H. Mead Coal Company, a West Virginia corporation, for the year 1934 in the amount of $1,475.16. 38 B. T. A. 1163, 1164.

After the Commissioner determined a deficiency the taxpayer applied to the Board for a redetermination. After a hearing the Board made findings of fact and rendered an opinion upholding the action of the Commissioner, two members of the Board dissenting. On December 30, 1938, a decision was entered in accordance with the opinion of the majority of the Board.

There is no dispute as to the facts and as found by the Board they are as follows:

"Petitioner is a West Virginia corporation, with its office in Beckley, West Virginia, and is engaged in the business of mining and selling coal. It filed its income tax return for 1933 on March 15, 1934, with the collector of internal revenue at Parkersburg, West Virginia. A net loss of $88,-098.94 was reported but no claim for a depletion deduction was made. Attached to the return was the following statement signed by J. P. Nowlin as treasurer for the petitioner:

" 'This Tax-payer elects to have a depletion allowance for succeeding taxable years, computed with reference to percentage depletion in the case of the following properties:

" 'Western Pocahontas Corporation Property (2 tracts)

" 'Thompson-Davis property (1 tract)

" 'Piney Coking Coal Land Company (2 tracts)

" 'This tax-payer elects to have depletion computed without reference to percentage depletion in the case of the following property:

" 'Stone Coal Land Company Tract.

" 'No percentage depletion deducted for 1933 because this tax-payer has no net income for this year.'

"Petitioner filed its income tax return for 1934 on March 15, 1935. The return showed net taxable income in the amount of $66,276.89 and a tax in the amount of $9,113.07. No depletion deduction was claimed. Neither did the return contain a statement showing any election to have a depletion allowance in respect of any of its properties computed with or without regard to percentage depletion for the taxable year or subsequent years. Petitioner's officers discussed the matter of filing a notice of election similar to that filed with its 1933 return, but, because of advice of counsel to the effect that it had nothing to deplete and was accordingly entitled to no deduction therefor, it claimed no depletion deduction on its 1934 return and filed no statement of election to take or to compute depletion on the percentage basis.

"In January 1936, as the result of a conversation between its officers and an internal revenue agent, petitioner concluded that the advice of its counsel in respect of its right to take a depletion deduction was erroneous and that it should have claimed depletion for 1934 on the percentage basis. On February 6 following petitioner filed an amended return for 1934 with the collector of internal revenue at Huntington, West Virginia. In addition to the schedules attached to the 1934 return when filed on March 15, 1935, the amended return filed on February 6, 1936, carried a depletion schedule which reflected a claimed depletion allowance computed on the percentage basis in the amount of $33,138.44. At the foot of this schedule the following statement appears:

" 'Depletion allowance is computed on the percentage basis in accordance with our election previously made and stated on prior return.

" 'Through inadvertence no depletion allowance was deducted from income upon our original 1934 return. To correct that error this amended return for 1934 is filed, together with claim for refund of tax overpaid in consequence of our failure to deduct proper depletion allowance.'

"The respondent has refused to accept the amended return for 1934 filed by the petitioner on February 6, 1936, or the statements contained therein as a proper elec-

tion under section 114 (b) (4) of the Revenue Act of 1934, to take depletion on the percentage basis.

"The parties have agreed that for 1934 petitioner is not entitled to a depletion deduction computed on the unit basis, and further that if it is entitled to a depletion deduction computed on the percentage basis the amount of the deduction is $15,632.09."

The only question presented for our consideration is whether the petitioner is entitled to percentage depletion for the year 1934.

The pertinent statutes are:

Sec. 23 (m) Revenue Act of 1934, 26 U.S.C.A. § 23 (m).

Sec. 114 (b) (4) Revenue Act of 1932, 26 U.S.C.A. § 114 note.

Sec. 114 (b) (4) Revenue Act of 1934, 26 U.S.C.A. § 114(b) (4).

The contention on behalf of the petitioner is first, that the election of percentage depletion made in its tax return for the year 1933 held good for "all succeeding taxable years" and therefore entitled it to percentage depletion for the year 1934 and, second, that if another election was required by the Revenue Act of 1934, in making its amended return for the year 1934, which amendment the Commissioner should have allowed, it had complied with the requirement.

It is clear that if the petitioner has made the election required by the Act of 1934, what it did in its return for the year 1933 is immaterial. We will therefore first consider whether the Act of 1934 has been complied with by the taxpayer. We are of the opinion that it has.

Section 114 (b) (4) of the Revenue Act of 1934 reads as follows:

"* * * A taxpayer making his first return under this title [chapter] in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. * * * ."

In using the words "first return" Congress evidently intended to include a completed first return or a first return as properly amended and did not intend to limit the taxpayer's right of election to the first form filed. Any other construction would, in fairness to the taxpayer, be too narrow and restricted. A first return is no less a first return because amended, provided the amendment be timely and is made to correct a mistake, made without any intent on the part of the taxpayer to take any undue advantage as to its tax payments, and without any bad faith. A different construction would, as said in the case of Glenn v. Oertel Co., 6 Cir., 97 F.2d 495, 496, permit the government to lay a tax upon the taxpayer's errors rather than its income. In that case the court discussed what constituted a "first return" and said: "We think that the correct view, which accords with the principle that 'in construing tax laws all doubt must be decided in favor of the taxpayer' (Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211), is, that the incorrect, invalid return springing from an honest mistake would not support any fair levy or assessment and that the Congress did not intend to prohibit its correction within the permitted period; that 'the taxpayer should be permitted to do what he had the right to do in the first instance' (Lucas v. Sterling Oil & Gas Co., 6 Cir., 62 F.2d 951, 952); and that the corrected return of September 1 be adjudged the 'first return under this section' as distinguished from returns of subsequent years which were to be based thereon. * * * This neither penalizes appellee nor takes away from appellant any substantial right. It places appellee upon an equal footing with all similar taxpayers who file a single corrected return within the permissible limit. * * * ."

Here the taxpayer, being badly advised, failed to claim depletion on a percentage basis in the first form of the return it made but immediately upon learning of its mistake, and before the time for filing its return for the next succeeding year, filed an amendment claiming the depletion to which it was admittedly entitled.

When we consider the fact that in its return for the year 1933 the taxpayer had elected to claim depletion for succeeding taxable years as provided in the Revenue Act of 1932; that at the time of filing its initial return for the year 1934 it had no

knowledge that its election to claim depletion on a percentage basis was required to be repeated; that the printed form for the 1934 return contained no notice that a new election was required; and that by its amended return it endeavored to correct the mistake, stating that it had been made "through inadvertence", we are forced to the conclusion that in all fairness, and certainly fairness is to be expected from a government in dealing with its taxpayers, the amendment to the return should have been allowed. In rejecting the amendment the Commissioner was in error.

■ It is contended on behalf of the respondent that in failing to claim depletion on a percentage basis in its return first filed, the taxpayer had made an election and that the election so made may not later be rescinded by the filing of an amended return. We cannot agree with this contention.

The Board of Tax Appeals held in the case of Raymond v. Commissioner, 34 B. T. A. 1171, that the Commissioner was in error in not accepting an amended return offered by a taxpayer.

■ If an amendment made to correct a mistake, presented within a reasonable time, is rejected through a narrow and harsh construction of the law, to the detriment of the taxpayer, such rejection is arbitrary and unjust. It certainly is not the duty of the Commissioner to deprive a taxpayer of any rights justly due him.

"This seems to us to constitute the first instance of a mature and deliberate choice by the appellee, based upon knowledge of all the material facts as disclosed by the closing of its books; and, in view of the effect of an election upon future returns, we do not think that such election should be held to be effected, unless based upon knowledge of this kind as indicative of a final and deliberate choice." Lucas v. Sterling Oil & Gas Co., 6 Cir., 62 F.2d 951, 952.

"* * * In view of the radical changes in the law, of which the petitioner had scant notice, if any, in fairness and justice to the taxpayer the return should have been received and considered. Taxes are assessed on income and not on honest mistakes of the taxpayer. It was the duty of the Commissioner to do nothing arbitrary or unreasonable that would deprive petitioner of rights created by the new law and the regulations thereunder. It was a breach of discretion on the part of the Commissioner

not to receive the amended return from 1925 under the circumstances disclosed." Morrow, Becker & Ewing, Inc. v. Commissioner, 5 Cir., 57 F.2d 1, 3.

■ We agree with the contention made on behalf of the petitioner that the depletion provisions of the Revenue Acts of 1932 and 1934 are liberalizing, rather than limiting, provisions and that Congress intended to allow depletion deductions by one of the two methods, and intended to give taxpayers a right to elect whichever method they preferred. The decision of the Board in this case deprives the petitioner of that right.

■ As was said by the dissenting member of the Board: "While there is no statutory authority for amended returns, 'it is well known that the Treasury Department, both in practice and by regulation * * * has been liberal in authorizing and accepting such returns.' Lucas v. Sterling Oil & Gas Co. [6 Cir.], 62 F.2d 951. In that case the taxpayers had exercised an option, granted by regulation, of charging certain expenditures to capital. In February of the following year, after other facts had been ascertained, it filed an amended return claiming the expenditures as operating expenses. The court held that under the facts there present 'the initial return may properly be regarded as tentative in its nature, and as not constituting an election. In such case the taxpayer should be permitted to do what he had the right to do in the first instance.' In Morrow, Becker & Ewing, Inc. v. Commissioner [5 Cir.] 57 F.2d 1, the court recognized the lack of statutory authority for amended returns, but held that it was a breach of discretion for the Commissioner to refuse to accept an amended return wherein the taxpayer, greatly to its own benefit, sought to change from the installment basis to the deferred payment basis of reporting income. Cf. F. Harold Johnston, Executor, 33 B. T. A. 551. These cases establish the power in the Commissioner to accept amended returns under circumstances similar to those in the present case, particularly where the taxpayer acts with reasonable promptness to take advantage of a statutory privilege clearly granted. That is the situation here. Before the petitioner's return was due for the next taxable year it sought to secure the statutory privilege of securing percentage depletion. Under the facts here I think that the petitioner should be permitted to do what it had the right to do in the first

instance, namely, choose percentage depletion."

Cases relied upon to support respondent's contention that the amendment should not have been allowed are those in which a different statute is involved. In Pacific National Co. v. Welch, 304 U.S. 191, 58 S.Ct. 857, 82 L.Ed. 1282, the Supreme Court held that where a taxpayer deliberately elected to report its profits from realty sales upon a completed transaction basis the taxpayer was bound by the election once made. There was in that case no question of mistake or inadvertence on the part of the taxpayer and no question of a former election such as was made by the petitioner here in its return for the year 1933.

Other cases relied upon on behalf of the respondent[1] hold that amendments to a return were properly rejected. We are of the opinion that these cases are not controlling here.

In the class of cases known as the capital stock tax cases, also relied upon by the respondent, the statute under consideration expressly provides that the declaration of value made in the first return cannot be amended. In Haggar Co. v. Commissioner of Internal Revenue, 5 Cir., 104 F.2d 24, and William B. Scaife & Sons Co. v. Driscoll, 3 Cir., 94 F.2d 664, it was held that the express language of the statute precluded the amendment. A similar holding is found in the case of Blake & Kendall Co. v. Commissioner, 1 Cir., 104 F.2d 679, decided June 13, 1939.

Yet, as we have set out above, the Oertel case held that even where the statute expressly prohibited an amendment it should be allowed under the circumstances of that case and in Philadelphia Brewing Co. v. United States, decided by the Court of Claims May 29, 1939, 27 F.Supp. 583, the Oertel case is approved and followed.

In none of the decisions we have found do the facts make as strong a case for the allowance of an amendment to a tax return, so that the taxpayer may be treated fairly and equitably, as do the facts in the instant case.

Our conclusion that the petitioner has complied with the requirements of the

Revenue Act of 1934 makes it unnecessary for us to discuss the effect of the election made by it in its return for the year 1933 for that and succeeding years.

Reversed.

[1] Buttolph v. Commissioner, 7 Cir., 29 F.2d 695; Alameda Inv. Co. et al. v. McLaughlin, 9 Cir., 33 F.2d 120; Rose v. Grant et al., 5 Cir., 39 F.2d 340; Lucas v. St. Louis National Baseball Club, 8 Cir., 42 F.2d 984; certiorari denied, 282 U.S. 883, 51 S.Ct. 87, 75 L.Ed. 779; Duke Power Co. v. Commissioner, 4 Cir., 44 F.2d 543; Radiant Glass Company v. Burnet, 60 App.D.C. 351, 54 F.2d 718; Champlin v. Commissioner, 10 Cir., 78 F. 2d 905.