**J. E. RILEY INV. CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9234.

Circuit Court of Appeals, Ninth Circuit.

March 16, 1940.

Writ of Certiorari Granted May 20, 1940.

See 60 S.Ct. 1077, 84 L.Ed. ——.

Robert Ash, of Washington, D. C., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Ellis N. Slack, Sp. Assts. to the Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The case is here on petition to review a decision of the Board of Tax Appeals. It involves the construction of a provision of § 114 (b) (4) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts.

That act (§ 23 (m), 26 U.S.C.A. Int.Rev. Acts, provides that in computing net income there shall be allowed as deductions in the case of mines and other natural deposits a reasonable allowance for depletion, according to the peculiar conditions in each case. Section 114 (b) (4) allows a depletion of 15% in the case of metal mines, subject to the condition that the taxpayer shall state

in his first return under the act that he desires depletion computed on that basis. The statute is shown on the margin.[1]

In its income tax return for 1934 petitioner, whose business is the mining of gold, made no statement of its election in respect of depletion allowance. The return was made out and filed in January, 1935. On March 3, 1936, petitioner filed an amended return claiming percentage depletion, and also claimed a refund.

Petitioner is a Nevada corporation with its principal office and place of business at Flat, Alaska. Flat is in a remote part of the territory, and conditions of travel are such that it takes weeks for mail originating at that place to reach Tacoma. The slowness of the winter service invariably resulted in current tax return forms reaching Flat too late for timely execution and filing. In order to avoid delinquency, it was the custom of petitioner's officers to use old return forms; consequently taxpayer's original return for 1934 was filed on a 1933 form which had been mailed it by the Collector at Tacoma.

When petitioner's return for 1934 was filled out its officers did not know of the statutory provision allowing percentage depletion, but did know that, unless the law had been changed, petitioner was not entitled to depletion, as it had no basis for cost depletion. The Collector, in sending the forms, had not advised petitioner with respect to statutory depletion. Petitioner first actually learned of the provision in August, 1935, when it was advised by a revenue agent that it was entitled to percentage depletion for both 1933 and 1934. The agent prepared reports to that effect, as a result of which a refund was paid for 1933, but not for 1934.[2] The Commissioner ruled that, as to the latter year, the taxpayer had failed to claim percentage depletion in its original return and hence was not entitled to claim it thereafter.

Had taxpayer's officers known of the 1934 statutory provision, they would have elected to take percentage depletion. As soon as they were advised that percentage depletion had been disallowed, they filed an amended return and a claim for refund as above stated. The taxpayer's gross receipts from gold mining for the year 1934 were $99,711.56 and it has paid a tax for that year in the amount of $4,684.00.

On petition for redetermination, the Board of Tax Appeals upheld the Commissioner's ruling denying percentage depletion.

Petitioner argues that amended returns, while not provided for by law, are recognized and have been uniformly construed as being amendments or supplements to the original return. Hence, it is said, the "first" return means an amended first return; so, an election made in an amended first return is an election made in a "first" return.

---

[1] "Percentage depletion for coal and metal mines and sulphur. The allowance for depletion under section 23 (m) shall be, in the case of coal mines, 5 per centum, in the case of metal mines, 15 per centum, and, in the case of sulphur mines or deposits, 23 per centum, of the gross income from the property during the taxable year * * *. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property. A taxpayer making his first return under this title [chapter] in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. The method, determined as above, of computing the depletion allowance shall be applied in the case of the property for all taxable years in which it is in the hands of such taxpayer * * *."

[2] H.Rep. No. 704, 73d Cong., 2d. Sess., states: "Section 114 (b) (4). Percentage depletion for coal and metal mines and sulphur: Under the Revenue Act of 1932, percentage depletion was first allowed in the case of coal, metal, and sulphur mines. That act required the taxpayer to make in his 1933 return an election, binding for 1934 and subsequent years, as to whether the depletion deduction in such cases was to be computed upon a percentage basis. To avoid administrative complexity, your committee is of the opinion that the taxpayer making his first return under the bill should be entitled to a new election as to whether he will compute his allowance for depletion in the case of coal, metal, and sulphur mines upon the percentage basis. This section of the bill so provides."

In the Fourth Circuit, in C. H. Mead Coal Co. v. Commissioner, 4 Cir., 106 F.2d 388, 390, the court reached a similar conclusion, holding that in using the words "first return" Congress intended to include a first return as properly amended. Any other construction, the court thought, would, in fairness to the taxpayer, be too narrow. Provided the amendment is timely, and is made in good faith in order to correct a mistake, a first return was held to be no less such because amended. By the phrase "timely amendment" we understand that the court meant an amended return made by the taxpayer, as in that case, "immediately upon learning of its mistake, and before the time for filing its return for the next succeeding year." The holding appears to confuse the statutory requirement with the supposed authority or duty of the Commissioner to relieve against mistakes.

■ The act applies only to taxable years beginning after December 31, 1933 (§ 1), 26 U.S.C.A. Int.Rev.Acts. Here the taxpayer reported its income on the basis of the calendar year, so that the first return filed by it under the act was the return for the calendar year 1934. By first return, we think, Congress had reference to the return contemplated by § 53 of the act, 26 U.S.C.A. Int.Rev.Acts, that is, to the return required to be filed on or before the 15th day of March following the close of the calendar year, or within such extended time, not exceeding six months, as has been granted by the Commissioner under § 53 (a) (2).

This interpretation is in harmony with Haggar Co. v. Helvering, 60 S.Ct. 337, 339, 84 L.Ed. —— (Jan. 2, 1940). That case involved the construction of the phrase "first return" as used in the capital stock tax provision of the 1934 act. The court there held that an amended return, filed during the extended time allowed by the Commissioner for filing the first return under the act, was a timely return and should have been accepted. It pointed out that "it has long been the practice of the department, in the cases of other types of tax to accept an amended return, filed within the period allowed for filing returns, as the return of the taxpayer for the taxable year."

■ Had the taxpayer, in the case before us, made its election by amendment within the time allowed by the act for filing returns, or within an added period granted for filing its return, a substantial compliance with the requirements of the act would have resulted. It would seem, indeed, that the taxpayer may make a substituted return of that sort as a matter of right. But petitioner sought to make its election by amending long after the expiration of the statutory period, and it had obtained no extension.

The statute provides that the method of computation elected by the taxpayer, or the method of computing depletion without regard to percentage where the taxpayer indicates no election, shall be applied in the case of the property for all future years. If the view broadly stated by petitioner is correct, an ordinary amended return electing to take depletion allowance on a percentage basis may well throw into confusion the computation of the taxpayer's depletion for ensuing taxable years. However, petitioner suggests a narrower view, in line with Mead Coal Co. v. Commissioner, supra, that the amended return must perhaps be filed before the expiration of the time allowed for making a return for the ensuing year. But if it be assumed that Congress intended to permit an election by amendment after the lapse of the statutory time for making returns, it failed to provide any time limitation of the sort suggested. Not only is there no such limitation set out in the act, there is, so far as we are aware, no regulation or practice requiring that amended returns, where permitted, be filed "promptly", or within a "reasonable" time, or before the filing of the return for the next year. [3]

■ Should we adopt a time limitation of this sort, we must perforce embark on waters not charted by Congress or mapped by familiar bureau regulation—an excursion into the legislative domain not open to the courts. If by a first return Congress meant a return as it may be amended in line with the practice heretofore prevailing in cases of other types of tax, it would follow that where a taxpayer inadvertently omits to state his election in a return filed within the statutory period, he may, conformably to the intent of Congress, supply the omission at any time within the three-year period prescribed by § 322, 26 U.S.C.A. Int.Rev.Acts, for claiming refunds.

---

[3] Art. 43–2 of Regulations 86, which permits the filing of an amended return for the purpose of deducting a loss occurring during a prior taxable year but not then ascertained, indicates that such a return may be filed at any time within the period allowed for claiming a refund.

658

This construction substantially nullifies other and mandatory provisions of the statute.

The situation is not the ordinary one of the use of an amended return to correct errors and miscalculations. Rather, it is an attempt, by the filing of an amended return, to adopt a method of computation at variance with that which the statute itself irrevocably imprints on the statutory return in those cases where the taxpayer has failed to indicate an election.

In Pacific National Co. v. Welch, 304 U. S. 191, 58 S.Ct. 857, 858, 82 L.Ed. 1282,[4] it was pointed out that in the case of overpayment the taxpayer is entitled to a refund calculated according to the method on which the return was based; but that a change from one method to another requires recomputations and readjustments of tax liability for subsequent years and imposes burdensome uncertainties upon the administration of the revenue laws; further, that "it would operate to enlarge the statutory period for filing returns * * * to include the period allowed for recovering overpayments." In that case the amended return was filed in an attempt to correct a mistake arising out of the taxpayer's ignorance of his rights under the law. See Pac. Natl. Co. v. Welch, 9 Cir., 91 F.2d 590, 592. The right to amend the return was denied.

■■ It is argued that since appellant had exhausted its basis for cost depletion, and was aware of that fact, it had no real election to make—that its choice was either to take percentage depletion or none at all. However, considerations having to do with the general theory of election have little place in the discussion, since we are dealing with a statute prescribing more or less arbitrary rules. The act provides in general terms for the computation of depletion allowance in all cases of mines where deductions on account of depletion are claimed, not merely for those instances in which the taxpayer may have a choice between alternative methods. It was proper to require the taxpayer, even though he has no basis for cost depletion, to state in his first return under the act whether he elects to have depletion allowance computed on the percentage basis. The taking of the deduction was a privilege granted the taxpayer; and in order to avail himself of it he must meet the terms on which the offer was held out. It was within the power of Congress to impose the mandatory alternative that the depletion allowance "shall" be computed for the current and future tax years without reference to percentage, if the taxpayer fails to make such statement in his first return.

■ Congress may condition deductions from gross income in any manner it sees fit. Helvering v. Independent Life Ins. Co., 292 U.S. 371, 54 S.Ct. 758, Pearl E. Deputy et al. v. Du Pont, 60 S.Ct. 363, 84 L.Ed. —— (Jan. 8, 1940). It may be, as petitioner says, that it was the purpose of Congress to liberalize depletion allowance, but if so, the liberality was confined to the offer. It did not extend to the time or manner of taking advantage of it.

It appears to be conceded—and the concession is implicit in Mead Coal Co. v. Commissioner, supra—that a taxpayer who knows the law and who desires percentage depletion is bound to state his choice in his first return under the act, failing which the statute peremptorily removes the right to apply that method in the first and all future tax years. The reason for this peremptory rule is obvious; and the statute contains no saving clause relieving a taxpayer or authorizing the Commissioner to relieve him from the consequences of the rule on a showing that he was ignorant of it. We know of no general power in the Commissioner to waive a mandatory provision of this sort on proof that the taxpayer did not know of its existence; and it is a novel rule of interpretation which varies the meaning of a statute to suit the mental state of those affected by it.

■ It is thus inadmissible to assume that Congress intended the statutory plan to bind those only who have actual knowledge of it. Government cannot proceed on that basis. The act (§ 53 (a) (2) authorizes the Commissioner to grant a reasonable extension of time for filing returns;[5] and the recourse of one in the situation of petitioner would seem to be confined to the obtaining of an extension, if additional time is needed in which to investigate current legislation.

Our opinion heretofore filed as the ground for the judgment of affirmance

---

[4] For other cases following the same rule, see Rose v. Grant, 5 Cir., 39 F.2d 340; Alameda Inv. Co. v. McLaughlin, 9 Cir., 33 F.2d 120; Radiant Glass Co. v. Burnet, 60 App.D.C. 351, 54 F.2d 718.

[5] Regulation 86, Art. 53-2, Revenue Act of 1934.

heretofore rendered is withdrawn and this opinion is substituted therefor. Petition for rehearing denied.

MATHEWS, Circuit Judge (dissenting).

Respondent disallowed the depletion deduction claimed by petitioner because, as stated by respondent, the claim was "based upon an amended return" instead of an original return. On that ground and no other, respondent defended and sought to justify his action. He did not, before the Board of Tax Appeals or in this court, claim or suggest that the amended return was not timely. His sole contention, before the Board and here, was that the amended return was not a "first return", within the meaning of § 114 (b) (4) of the Revenue Act of 1934, 48 Stat. 710, 26 U.S.C.A.Int. Rev.Acts, § 114 (b) (4), and that, therefore, the claimed deduction could not be allowed. This contention which the Board upheld, should be rejected. Haggar Co. v. Helvering, 60 S.Ct. 337, 84 L.Ed. ——, decided January 2, 1940;[1] C. H. Mead Coal Co. v. Commissioner, 4 Cir., 106 F.2d 388, 390. Since respondent has raised no question as to the timeliness of the amended return, this court cannot, with propriety, consider or decide any such question.

The decision should be reversed.

---

[1] Reversing Haggar Co. v. Commissioner, 5 Cir., 104 F.2d 24, relied on by respondent.