**BOONE COUNTY COAL CORPORATION
v. UNITED STATES.**

**No. 47.**

District Court, S. D. West Virginia, at Charleston.

Feb. 12, 1941.

Frederick L. Thomas and Wood Bouldin, Jr., both of Charleston, W. Va. (Price, Smith & Spilman, of Charleston, W. Va., on the brief), for plaintiff.

Charles M. Love, Jr., Asst. U. S. Atty., of Charleston, W. Va., for defendant.

BARKSDALE, District Judge.

This action having been tried upon the facts by the Court without a jury, the Court doth hereby find the facts specially and state separately its conclusions of law thereon, and directs the entry of the appropriate judgment, as follows, in conformity with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c:

Findings of Fact.

(1) The plaintiff, a West Virginia corporation, with its principal place of business at Sharples, in Logan County, West Virginia, within the jurisdiction of this Court, brings this suit against the United States of America under its internal revenue laws for the recovery of $5,531.86, plus interest, representing federal income and excess profits taxes paid for the calendar year 1935. Walter R. Thurman was the Collector of Internal Revenue, to whom plaintiff paid the taxes involved here, from July 1, 1933, until October 1, 1937, but was not in office when this suit was instituted.

(2) On or about March 15, 1936, plaintiff filed with said Walter R. Thurman, Collector of Internal Revenue, its corporation income and excess profits tax return for the year 1935, a true copy of which is filed with the complaint as "Exhibit A", reflecting thereon taxable income of $60,-738.19, with the resultant tax due of $8,351.50, which was paid as follows: On March 15, 1936, $2,087.89, with the balance in three equal installments on June 12, September 11, and December 9, 1936.

(3) Thereafter, on May 13, 1937, plaintiff filed a claim for refund of the total taxes paid of $8,351.50, and accompanied

such claim, as a part thereof, with an amended corporation income and excess profits tax return for the year 1935, which alleged on its face a net loss for 1935 of $14,722. This claim, after audit and consideration, was allowed to the extent of the difference between the total taxes paid of $8,351.50 and the amount sued for of $5,531.86, which was rejected. Thereafter, this suit was timely instituted for the recovery of this latter amount.

(4) The facts and circumstances relating to this controversy are as follows: The plaintiff is the fee simple owner of approximately 28,000 acres of land in Logan and Boone Counties, West Virginia, upon which it has been engaged in the business of mining coal for many years. At no time prior to 1928 did plaintiff engage in the oil and gas business. From 1928 to 1936, inclusive, its activities in the oil and gas business consisted of those hereinafter described.

(5) In the latter part of 1928, plaintiff entered into an agreement with the Clendenin Gasoline Company, hereafter called "Clendenin", of New York City, by the terms of which the latter acquired the right to drill five gas wells upon plaintiff's land, together with an option to buy the gas and oil rights to said 18,000 acres of land for $575,000. The agreement further provided that in the event Clendenin failed to exercise the option, it should operate the five wells drilled by it on plaintiff's land and dispose of the proceeds derived therefrom on the basis of 60% to Clendenin and 40% to plaintiff, after the deduction by Clendenin of all expenditures incurred in the drilling, development, and operation of said wells.

(6) During the year 1930, Clendenin elected not to exercise its option to buy the gas and oil underlying plaintiff's land, and in such year there were no sales of gas from the wells and no income therefrom.

(7) In 1931, the gross sales from the five wells drilled by Clendenin amounted to $9,163.56, and after Clendenin deducted from such gross income miscellaneous expenses incurred in the drilling and operation of said wells there remained no net income payable to plaintiff, and plaintiff reported no net income from the aforementioned wells. The intangible drilling costs incurred by Clendenin in such development and operation were neither expensed nor capitalized by plaintiff and plaintiff incurred no such expense, except in the sense that such expense was by Clendenin deducted from income, 40% of which would have been going to plaintiff if there had been net income for distribution.

(8) In the year 1932, Clendenin, after deducting the expenses in connection with the operation and development of said wells, distributed to plaintiff $638.95 net, of which the plaintiff reported in its income tax return for that year $347.95 rather than $638.95, because of the fact that the December payment was not received until the following year. Plaintiff reported this sum as "other income". The intangible drilling cost incurred by Clendenin was neither capitalized nor expensed by plaintiff in its return for that year.

(9) No money was expended by plaintiff and the Clendenin Gasoline Company during 1933 in intangible drilling costs on their five wells. In 1934 and 1935 such costs were treated as in the year 1931 and 1932. In its income tax return for 1934 depletion on the Clendenin wells in the amount of $1,306.48 was claimed by plaintiff as a deduction from its 1934 gross income. The Revenue Agent who reviewed the return allowed such item to the extent of $776.25. In the paper writing attached to the bill of complaint herein, and marked "Exhibit A", depletion on the Clendenin wells in the amount of $1,547.71 was claimed by plaintiff as a reduction from its 1935 gross income. Of this amount the Revenue Agent who reviewed the return allowed such item to the extent of $642.49.

(10) In 1935, the plaintiff, for the first time on its own independent account, embarked upon a gas well drilling operation, and during that year drilled five gas wells which were capped and shut in. No gas was produced for sale during this year, but in 1936 plaintiff sold its gas to Hope Natural Gas Co. In such drilling and development operations plaintiff expended during the year 1935 the total sum of $62,840.43, of which $42,664.33 represented intangible drilling and development cost, and $20,176.10 the tangible drilling and development cost. The said total drilling and development cost of $62,840.43 was capitalized on the books of the plaintiff at the close of the year 1935.

(11) On plaintiff's books of account for the year ending December 31, 1935, the amount accumulated in the construction accounts of plaintiff's independently drilled wells was entered in a capital account by plaintiff's bookkeeper without consultation

with, or specific direction from, any officer of the company. It had been customary to capitalize each and every sum spent by plaintiff in the development of coal properties, and the bookkeeper similarly treated on plaintiff's books all the cost of developing gas properties. He acted in good faith, but without specific direction and without knowledge of the election afforded gas producers by Article 23(m)–16 of Regulations 86. Neither he nor the officers of the plaintiff corporation were familiar with the gas production business.

(12) When, during the first quarter of the year 1936, plaintiff's accountant prepared plaintiff's 1935 income tax return, he prepared said return from the data appearing on plaintiff's books, which showed the intangible drilling and development cost in the capital account. There were no sales of gas and no income from plaintiff's independently drilled wells during the year 1935. The president of the plaintiff corporation was under the impression that it was unnecessary to determine the question of treating intangible costs when there was no income from the gas properties. As a result, he did not advise the accountant at that time, stating that before deciding the matter, he wished to consult with the plaintiff's attorneys, Price, Smith & Spilman, of Charleston, West Virginia, and with plaintiff's technical adviser on gas matters, Ralph E. Davis, of Pittsburgh, a well-known engineer widely experienced in the oil and gas business, who was then in Texas. The president of the plaintiff corporation deferred his decision on the treatment of intangible drilling costs until a conference could be arranged with his advisers. The said "Exhibit A" reported no income from said gas wells, reported no depreciation on the tangible cost thereof and took no depletion on the intangible cost thereof. The said accountant did not attach to "Exhibit A" any statement indicating an election as to the treatment of intangible costs, as prescribed by Regulations 86, Article 23(m)–16(d).

(13) In plaintiff's income and excess profits tax return for the calendar year 1935, filed on or about March 15, 1936, the said total tangible and intangible drilling cost of $62,840.43 was included in the total sum of $3,297,277.37 set out on page 2 of said return under Item 8(f) as depreciable assets, and was analyzed in a schedule attached to and made a part of said return. In said analysis, under the heading of "De-preciable Assets", as of December 31, 1935, plainly appeared the gas wells development cost of $62,817.40.

No gas was sold from the wells drilled and developed by plaintiff during the year 1935, and no income therefrom accrued to plaintiff.

(14) In November, 1936, plaintiff's independently drilled gas wells began producing gas.

(15) On or about October 26, 1936, the officers of plaintiff and its advisers held a conference, at which it was decided that plaintiff should charge the intangible drilling and development cost of its own independently drilled wells to expense, and ordered the bookkeeper of plaintiff to change the books in accordance with such decision. Thereupon, the books of the plaintiff for the year 1935 were changed to reflect such treatment of intangible cost agreed upon at the conference. It was further agreed that an amended income and excess profits tax return for the year 1935 should be filed with the Collector of Internal Revenue, setting forth a clear statement of plaintiff's election to expense intangible cost as required by Treasury Regulations 86, Article 23(m)–16(d). However, since there was then pending between the Treasury Department and the plaintiff a tax controversy involving depreciation on plaintiff's coal mining equipment during the tax year 1934, decision was reached to defer filing such amended return until after such controversy was settled.

(16) Prior to March 15, 1937, plaintiff secured a 60-day extension from such date within which to file its income and excess profits tax return for the calendar year 1936.

(17) On or about May 13, 1937, a special meeting of the board of directors of plaintiff was held, for the purpose of considering the manner of treating the intangible drilling and development cost of its own independently drilled wells. At such meeting there was unanimously adopted a resolution approving the conclusions reached at the heretofore described conference on October 26, 1936, and further directing that the intangible drilling and development cost be charged to expense for the year 1935. At this meeting the heretofore described amended income tax return for the calendar year 1935 was submitted, approved, and ordered filed with the Collector of Internal Revenue.

(18) Whereupon, on May 13, 1937, the plaintiff filed with the aforementioned Collector of Internal Revenue the paper writing attached to the bill of complaint filed herein and marked "Exhibit B". Appended to said paper writing were full depreciation schedules based on adjustments growing out of the tax controversy for 1934; also appended to the paper writing marked "Exhibit B" was a clear statement of plaintiff's election to expense intangible drilling and development cost.

(19) On May 13, 1937, less than two years after payment of the tax shown due on "Exhibit A", plaintiff filed with the aforementioned Collector of Internal Revenue with its tax return marked "Exhibit B", its claim for the refund of $8,351.50 paid by plaintiff as income and excess profits tax for the year 1935.

(20) Thereafter, on October 7, 1938, plaintiff's aforesaid claim for the refund of $8,351.50, filed on May 13, 1937, was formally allowed by the Commissioner of Internal Revenue to the extent of $2,287.43, and was formally rejected by him to the extent of $6,064.07. The item of $2,287.43 is not now in dispute. This claim for refund specifically referred to the return filed on May 13, 1937, and thereby incorporated that return as a part of the claim for refund. The Commissioner of Internal Revenue accepted the claim for refund and the return attached thereto, filed May 13, 1937, acted upon it, and allowed to plaintiff a partial refund based thereon. During the course of discussions in regard to the issues involved, there was presented to and filed with the Commissioner's agents a protest on October 29, 1937, well within the period of time for amendment of the claim for refund, or the filing of a new claim, which protest embraced all of the grounds, reasons and issues on which the plaintiff now seeks recovery. The Commissioner had before him all of the facts and issues now asserted as plaintiff's basis for recovery.

(21) On January 19, 1939, plaintiff filed a second claim for refund, in the amount of $532.21, based upon an issue not now before the Court. Such second claim for refund was allowed in full, with interest, on April 21, 1939, by the Commissioner of Internal Revenue.

(22) The amount at issue in the instant action is $5,531.86, plus interest thereon from the dates of payment.

(23) After the filing of the paper writing filed on May 13, 1937, but within the time allowed by the extension secured from the Treasury Department, plaintiff, on May 14, 1937, filed its income excess profits tax return for the year 1936. In such return plaintiff reported intangible drilling and development costs as expenses, not as capital expenditures.

(24) In plaintiff's income and excess profits tax returns for the years subsequent to 1936, intangible drilling and development costs have been reported as deductible expenses, not as capital expenditures.

Conclusions of Law.

This action is a controversy over the proper construction of Article 23(m)–16 of Treasury Regulations 86, applicable for the tax year 1935, which, so far as pertinent here, is as follows:

"(a) (1) * * * All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option, of the taypayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs."

"* * * * *

"(d) This article does not grant a new option or election. Any taxpayer who made an election or elections under article 243 of Regulations 74 or under article 223 of Regulations 69 or under article 236 of Regulations 77 is, by such election or elections, bound with respect to all optional expenditures whether made before January 1, 1934, or after December 31, 1933, in connection with oil and gas wells. Any taxpayer who has never made expenditures for drilling oil or gas wells prior to the first taxable year beginning after December 31, 1933, must make an election as to intangible drilling and development costs in general in the return for the first taxable year in which the taxpayer makes such expenditures. * * * Any election so made is binding for all subsequent years. A taxpayer is considered to have made an election in accordance with the manner in which the respective types of optional items are treated (1) in his return for the first taxable year ending after December 31, 1924, in which optional expenditures of the respective types are or were made, or (2) in an amended return filed between June

18, 1927, and December 18, 1927, in accordance with Treasury Decision 4025. Any taxpayer who has made expenditures for optional drilling and development costs must attach to his return for the first taxable year beginning after December 31, 1933, and for each year thereafter a clear statement of his election under each of the options, together with a statement of the time at which, and the manner in which, such election was made."

Plaintiff first incurred "intangible drilling and development costs" in the tax year 1935. In its original return for 1935, the plaintiff capitalized such costs. This return, however, did not contain, nor was there attached thereto, any "clear statement of his election" under the option granted it by this regulation. This return was filed within the time allowed by law.

On May 13, 1937, plaintiff filed an amended return which treated intangible drilling and development costs as expense, and attached thereto a clear statement of its election to treat such costs as expense. This amended return was filed after the expiration of the statutory period for filing the original return, and after the expiration of any period for which an extension of time for filing such return could legally have been granted by the Commissioner of Internal Revenue.

The plaintiff contends that it cannot be deemed to have exercised the option granted it by the above quoted regulation, until it intelligently made an election thereunder, that it made no such election in its original return, and that its amended return, which does contain a clear statement of its election, should be treated as its "return for the first taxable year. * * *" If it is so treated, then plaintiff is entitled to recover in this action.

Defendant contends that by the terms of the regulation plaintiff must be "considered to have made an election in accordance with the manner in which" it has treated intangible drilling and development costs in its "return for the first taxable year", which defendant contends is the original return.

This question was first presented to me in April, 1940, upon defendant's motion to dismiss the complaint. At that time, the conflict between C. H. Mead Coal Co. v. Commissioner, 4 Cir., 106 F.2d 388, and J. E. Riley Investment Co. v. Commissioner, 9 Cir., 110 F.2d 655, was apparent. I chose to follow the Mead case, and overruled defendant's motion. Not only did I prefer the reasoning of the Mead case, but it seemed to me that this case had been approved, at least inferentially, by the Supreme Court in Haggar Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340.

However, it now seems to me that in the recent decision of J. E. Riley Investment Co. v. Commissioner, November 12, 1940, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. ——, the Supreme Court has settled the conflict between the Mead case and the Riley case, which in fact the Court said was its purpose in granting certiorari, and that the Supreme Court's decision in the Riley case is determinative of the issue here involved. My conclusions are therefore as follows:

(1) That plaintiff's original return filed March 15, 1936, is plaintiff's "return for the first taxable year" in which plaintiff made expenditures for intangible drilling and development costs.

(2) That the plaintiff, having treated such intangibles drilling and development costs as capital in its return for the first taxable year, is considered to have made an election to charge such expenditures to capital account.

(3) That the plaintiff is not entitled to recover anything in this action.

Therefore, an order will be entered dismissing plaintiff's action at its costs.