J. WILLIAM FRENTZ AND BARBARA B. FRENTZ, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4650–63—4652–63. Filed June 28, 1965.

*Frank E. Haddad, Jr.,* and *Arthur Clark, Jr.,* for the petitioners.
*Dennis M. Feeley,* for the respondent.

BRUCE, *Judge:* The respondent determined deficiencies in the income taxes of the respective petitioners for the year 1960 as follows:

| Docket No. | Petitioner | Deficiency |
|---|---|---|
| 4650–63 | J. William Frentz and Barbara B. Frentz | $620.33 |
| 4651–63 | Orville Brown and Alice Brown | 3,750.45 |
| 4652–63 | Morris Brown and Judy Brown | 3,626.61 |

The sole issue is whether the petitioners are entitled to deduct net losses claimed on their returns for 1960. Some facts are stipulated.

### FINDINGS OF FACT

The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

The above-named petitioners are husbands and wives. Each couple resides in Louisville, Ky., and each filed a joint Federal income tax return for the calendar year 1960 with the district director of internal revenue at Louisville. References to the petitioners hereinafter relate to J. William Frentz, Orville Brown, and Morris Brown.

On or about October 7, 1959, the petitioners purchased the entire outstanding capital stock of Ohio Valley Broadcasting, Inc., hereinafter referred to as Ohio Valley, an Indiana corporation engaged in the operation of a radio station under the call letters WLRP. Ohio Valley was licensed by the Federal Communications Commission,

[1] Proceedings of the following petitioners are consolidated herewith: Orville Brown and Alice Brown, docket No. 4651–63; and Morris Brown and Judy Brown, docket No. 4652–63.

hereinafter referred to as the FCC, to operate a radio station at New Albany, Ind. Its license was renewed under date of July 2, 1958, for a term ending August 1, 1961.

Ohio Valley was an electing small business corporation, having made a valid election under section 1372 of the Internal Revenue Code of 1954 in 1958. Petitioners filed timely and valid consents to this election.

On September 30, 1959, the FCC issued its consent to the transfer of control of Ohio Valley to the petitioners.

Prior to November 1, 1959, Ohio Valley requested the FCC to authorize a change of call letters, and effective November 1, 1959, the call letters were changed by the FCC from WLRP to WOWI.

A new checking account in the name of Ohio Valley Broadcasting, Inc., doing business as WOWI, was opened on November 3, 1959, at Royal Bank & Trust Co., Louisville.

Kentuckiana Broadcasting, Inc., hereinafter referred to as Kentuckiana, is a corporation formed under the laws of the State of Kentucky. The articles of incorporation were executed by the petitioners on December 31, 1959, and were filed with the secretary of state of Kentucky on January 11, 1960, on which date the corporation charter was issued.

Petitioners had employed counsel to prepare the articles of incorporation for Kentuckiana. Counsel sought advice from an attorney in Washington, D.C., versed in FCC practice, concerning the wording of a "purpose" clause acceptable to the FCC. This clause was received in December 1959, and the prepared articles were sent to the petitioners December 17, 1959, for execution.

The petitioners originally attempted to purchase the assets of Ohio Valley, but the sellers insisted on a sale of stock. The petitioners intended to dissolve Ohio Valley and form a new corporation to operate the radio station. The intent of the petitioners was to effect the transfer as of the close of Ohio Valley's fiscal year, October 31, 1959, and new call letters assigned by the FCC were made effective as of November 1, 1959. A new set of books was opened as of November 1 under the letters WOWI, and all the assets and liabilities of Ohio Valley were entered thereon. Quarterly returns of employment taxes and withholding of income taxes were made in the name of Ohio Valley covering wages paid in October and in the name of Kentuckiana for wages paid in November and December to the employees of the station. A new employer's identification number was secured in the name of Kentuckiana.

On November 30, 1959, there was filed with the district director of internal revenue at Louisville a Form 2553, "Election by Small Business Corporation," as to taxable status under subchapter S of the

Internal Revenue Code. This purported to be an election by Kentuckiana under section 1372(a) to be treated as a "small business corporation" for income tax purposes. The form was signed by Frentz, as president, under date of November 26, 1959, and attached was a statement signed by the petitioners, as the stockholders, consenting to such election. The form represented that the corporation's predecessor was Ohio Valley and that such predecessor was in existence from September 7, 1949, to October 31, 1959; that Kentuckiana was incorporated November 1, 1959, in Kentucky; that the first taxable year for which the election was effective was the year ending October 31, 1960; and that the petitioners were the only shareholders. The number of shares outstanding was stated to be 170, held 13.6 by Frentz, 78.2 by Morris Brown, and 78.2 by Orville R. Brown.

Ohio Valley was dissolved in 1960. Notice of intent to dissolve was given January 26, 1960. Articles of dissolution were executed February 1, 1960, and a certificate of dissolution was executed by the Indiana secretary of state on August 8, 1960.

Kentuckiana, on July 22, 1960, filed an application with the FCC for consent to an assignment of the broadcasting license from Ohio Valley to Kentuckiana, which application was approved August 23, 1960.

Kentuckiana filed a timely Form 1120–S, "U.S. Small Business Corporation Return of Income," for the fiscal period November 1, 1959, to October 31, 1960. The return reported income of $138,562.72, expenses of $166,812.53, and net loss of $28,249.81. The balance sheet as of October 31, 1960, showed assets of $176,582.39, liabilities of $34,259.64, common stock $170,000, capital surplus $792.24, and a deficit of $28,469.49. The return gave the date of incorporation as January 11, 1960, and scheduled the distribution of the loss $2,259.99 to Frentz, $12,994.91 to Morris Brown, and $12,994.91 to Orville Brown.

On the Federal income tax return filed by each of the petitioners for the calendar year 1960 a deduction was claimed for the loss from the business of Kentuckiana in the amount shown in the preceding paragraph. Respondent determined in each case that the loss so claimed was not allowable under section 1374 of the Code as Kentuckiana failed to meet the requirements of section 1372.

OPINION

Subchapter S of chapter 1 of the Internal Revenue Code of 1954, secs. 1371 to 1377, provides for elections by certain small business corporations as to taxable status. In general, where a qualified corporation has so elected, it is not subject to income tax, and its undistributed taxable income is taxed to the shareholders pro rata or its net operating

loss is allowable to the shareholders pro rata as a deduction from gross income.

When the petitioners acquired the stock of Ohio Valley it was an electing small business corporation pursuant to an election made in 1958. The petitioners consented to that election, as was required of new shareholders by section 1372(e)(1),[2] to keep the election in effect. The petitioners, in forming a new corporation, Kentuckiana, to take over the operation of the radio station, intended to have it qualified as an electing small business corporation. Their intention was to have it commence operations as of November 1, 1959, and they filed the required election in the name of Kentuckiana, together with their consents as shareholders, within the first month of the intended fiscal year, November 1, 1959, to October 31, 1960, as required by section 1372 (a) and (c) (1).[3] The difficulty with their attempt to have Kentuckiana qualify was that the corporation's articles were not filed and the charter was not issued until January 11, 1960.

Respondent takes the position that since Kentuckiana became a corporation on January 11, 1960, it could not, prior to such date, have stockholders, own assets, or do business; that the purported election on its behalf on November 30, 1959, and the purported consent to such election by the petitioners as shareholders were invalid and void; and that therefore it was not an electing small business corporation within

---

[2] SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION.

  (e) TERMINATION.—

    (1) NEW SHAREHOLDERS.—An election under subsection (a) made by a small business corporation shall terminate if any person who was not a shareholder in such corporation—

      (A) on the first day of the first taxable year of the corporation for which the election is effective, if such election is made on or before such first day, or

      (B) on the day on which the election is made, if such election is made after such day,

  becomes a shareholder in such corporation and does not consent to such election within such time as the Secretary or his delegate shall prescribe by regulations. Such termination shall be effective for the taxable year of the corporation in which such person becomes a shareholder in the corporation and for all succeeding taxable years of the corporation.

[3] SEC. 1372. ELECTION OF SMALL BUSINESS CORPORATION.

  (a) ELIGIBILITY.—Except as provided in subsection (f), any small business corporation may elect, in accordance with the provisions of this section, not to be subject to the taxes imposed by this chapter. Such election shall be valid only if all persons who are shareholders in such corporation—

    (1) on the first day of the first taxable year for which such election is effective, if such election is made on or before such first day, or

    (2) on the day on which the election is made, if the election is made after such first day,

  consent to such election.

      *      *      *      *      *      *      *

  (c) WHERE AND HOW MADE.—

    (1) IN GENERAL.—An election under subsection (a) may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any time during the month preceding such first month. Such election shall be made in such manner as the Secretary or his delegate shall prescribe by regulations.

the meaning of section 1371(b).[4] Respondent says that since Kentuckiana was not in existence on November 30, 1959, it had no authority to make an election and no shareholders who could consent to such election; that on or after January 11, 1960, it was an eligible small business corporation having power to elect and shareholders capable of consenting, but since thereafter it made no such election within the required period, the prior attempted election, being a nullity, could not operate as a valid election once Kentuckiana was qualified to elect.

Petitioners contend that the assets of Ohio Valley were transferred to Kentuckiana on November 1, 1959. There is no evidence of a transfer by deed or written conveyance, either to Kentuckiana or to the petitioners, individually, as of November 1 or any later date. Book entries were made as of November 1 showing assets and liabilities under the letters WOWI. These were the assets and liabilities of Ohio Valley. New bank accounts were opened. These were in the name of Ohio Valley, which petitioners say was an inadvertent error. The returns reporting withholding of income taxes for the period November 1 to December 31, 1959, were filed in the name of Kentuckiana, but these were filed in 1960 after the corporation charter was issued.

We have no reason to doubt the good faith of the petitioners in making their plans to have Kentuckiana take over the business operation as of November 1 and make an election under section 1372. Respondent concedes that the corporation, when chartered, was qualified so to elect. The failure of the petitioners' efforts is attributable to their own delay in the formal incorporation of Kentuckiana. Petitioners argue that Kentuckiana was a de facto corporation as of November 1, being an organization engaged in business which has more attributes of a corporation than of any other type of organization, citing *Morrissey* v. *Commissioner*, 296 U.S. 344 (1935). To constitute a de facto corporation there must be an attempt to perfect an organization under the law. *Federal Chemical Co.* v. *Paddock*, 264 Ky. 338, 94 S.W. 2d 645 (1936); 8 Fletcher, Cyclopedia Corporations, sec. 3796 *et seq.* There is no evidence of such an attempt until the articles of incorporation were executed. At the time the purported election was filed these articles were not prepared. We cannot say that a de facto corporation existed at that time. It is clear that Ohio Valley operated the business prior to November 1. Ohio Valley requested the change of call letters. A bank account was in its name. No steps were taken to dissolve it until January 26, 1960, and it was not dissolved until August 1960. The license was in its name and the transfer of the license to Ken-

---

[4] SEC. 1371. DEFINITIONS.

(b) ELECTING SMALL BUSINESS CORPORATION.—For purposes of this subchapter, the term "electing small business corporation" means, with respect to any taxable year, a small business corporation which has made an election under section 1372(a) which, under section 1372, is in effect for such taxable year.

tuckiana was not requested until July 1960. The reasonable interpretation of the evidence is that Ohio Valley continued to operate the business until January 11, 1960, or sometime after that date when Kentuckiana took over the operation.

In *William Pestcoe*, 40 T.C. 195 (1963), the stockholders of a corporation resolved to have it elect to report its income as a small business corporation under subchapter S. The form making the election and the shareholder consents were filed with the director of internal revenue too late to meet the time requirements of the statute or related regulations. We pointed out that the applicable statutes were both demanding and explicit, that the election is optional, but that taxpayers seeking to take advantage of these provisions must comply with their requirements, and we held the election was untimely and that we had no authority to grant an extension where Congress has set the time for making the election, citing *J. E. Riley Investment Co.* v. *Commissioner*, 311 U.S. 55 (1940), affirming 110 F. 2d 655 (C.A. 9, 1940), and a Memorandum Opinion of this Court. Cf. *Simons* v. *United States*, 208 F. Supp. 744 (1962).

The *Pestcoe* case illustrates the need for strict compliance with the requirements of the statute. The respondent, on brief, points out the difficulties in the present case from the Government's viewpoint as follows:

> In summation, this is not a case of the Government's denying the existence of a corporation. The problem is basically whether a corporation can be created for Subchapter "S" purposes by persons simply declaring to each other that they are a corporation, with no tangible evidence or outward manifestation of the existence of a corporation. The result requested by petitioners requires a construction of Subchapter "S" that it is so loose and liberal that it would be impossible to ascertain with any degree of certainty what types of organizations would qualify. In an organization having the development of Kentuckiana on November 1, 1959, it would be impossible to define "shareholders", or to distinguish them from subscribers, creditors, directors, or officers. It would also be difficult, if not impossible, to determine whether the election was made with the proper authority of the organization and with the shareholders' consent.

We agree with respondent that Kentuckiana has not made a valid election under subchapter S and that the petitioners are not entitled to deduct the losses claimed.

Petitioners contend, in the alternative, that if Kentuckiana was not an existing corporation capable of electing under subchapter S and the petitioners were not shareholders qualified to consent to such election, then Kentuckiana was at that time and continued to be an unincorporated joint venture, taxable as in the case of a partnership, and operated the radio station as such a business organization.

This alternative theory was first mentioned in petitioners' opening statement at the hearing. The petitions do not raise this issue and the petitioners have at no time amended their pleadings to include it.

The issue is not before the Court. The Court has held on numerous occasions that it will not consider issues which have not been pleaded. See *Sicanoff Vegetable Oil Corporation*, 27 T.C. 1056, 1066, (1957), and cases therein cited.

We further observe that were the question properly before the Court we could not agree with the petitioners, for there is no evidence of a transfer of assets from Ohio Valley to them as partners or joint adventurers, there is no written partnership agreement and no evidence that they held themselves out as partners or joint adventurers, also no partnership return of income was filed.

*Decisions will be entered for the respondent.*