ELIJAH W. RATCLIFF, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ratcliff v. Commissioner
Docket No. 2791-75.
United States Tax Court
T.C. Memo 1980-12; 1980 Tax Ct. Memo LEXIS 573; 39 T.C.M. (CCH) 886; T.C.M. (RIA) 80012; January 17, 1980, Filed Elijah W. Ratcliff, pro se. Robert B. Perry, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for calendar year 1971 in the amount of $6,435.36 and an addition to tax under section 6653(a), I.R.C. 1954, [1] in the amount of $321.77. The issues for decision are (1) whether petitioner is entitled under section 165 to a condemnation loss in the calendar year 1971, and, if so, the amount thereof; (2) whether petitioner properly claimed a loss of $14,583.33 *576 from the operation of Lake Livingston Washateria, Inc., for the calendar year 1971; and (3) whether any part of an underpayment of tax for the calendar year 1971 is due to petitioner's negligence or intentional disregard of the rules and regulations under section 6653(a). [2]
*577 FINDINGS OF FACT Petitioner Elijah W. Ratcliff, lived at Tennessee Colony, Texas, at the time of filing his petition in this case. Petitioner filed his individual Federal income tax return for the calendar year 1971 with the Internal Revenue Service Center, Holtsville, New York. On December 20, 1968, Trinity River Authority of Texas, a State governmental agency, filed a Petition for Condemnation, No. 1115, with the County Court of Polk County, Texas, captioned Trinity River Authority of Texas vs. Andrew DeLoach, et al. The named individual defendants were Andrew DeLoach, Tony DeLoach III, a/k/a T. S. DeLoach as well as Tony DeLoach, Jr., Collins DeLoach, Leo DeLoach, Coleman DeLoach, Mattie DeLoach Evans and Lila DeLoach King. As a result of plaintiff's exercising its power of eminent domain, a Polk County tract of land, E-56 in the John Burgess Survey, owned by defendants was confiscated. On April 11, 1969, judgment was entered in condemnation proceeding No. 1115 which awarded defendants $6,481.25. Trinity River Authority of Texas filed another Petition for Condemnation, No. 1116, on December 20, 1968, with the County Court of Polk County, Texas, captioned Trinity River *578 Authority vs. Tony DeLoach III, et al. Etta DeLoach Sykes and Novella DeLoach Ashley were amongst those named defendants. As a result of plaintiff's exercising its power of eminent domain, tracts of land, E-53 and E-54 in the John Burgess Survey, owned by defendants were confiscated. On June 2, 1970, judgment was entered in condemnation proceeding No. 1116 which awarded $33,600.35 to defendants. The judgment ordered that Trinity River Authority pay the award to the registry of the County Court for retention until the Second 9th Judicial District Court of Polk County, Texas, had rendered a final decision in pending case No. 7754. District Court case No. 7754, captioned "Lila King, et al vs. Novella DeLoach Ashley, et al.", was an action in trespass to try title of Polk County tracts E-53 and E-54. Plaintiffs claimed title by peaceable and adverse possession for at least ten years. Etta DeLoach Sykes and Amos Hayes were named defendants. Etta DeLoach Sykes was served with a citation of that proceeding on April 19, 1969, the reverse side of which she signed. Judgment by Consent was entered in the action in trespass to try title on November 24, 1970. Title was quieted by *579 awarding plaintiffs an undivided 0.8046875 interest in tracts E-53 and E-54, subject to the rights of Trinity River Authority of Texas as awarded in County Court condemnation proceeding No. 1116. The Judgment by Consent awarded an undivided 0.0703125 interest in tracts E-53 and E-54 to those defendants who were the heirs of Whit DeLoach. That judgment further awarded an undivided 0.1250 interest in those tracts to the heirs of Ben DeLoach, including amongst others, defendants Etta DeLoach Sykes and Amos Hayes. Petitioner was not shown as attorney of record for any party in any of the above-listed court proceedings. On April 12, 1971, as named attorney of record, petitioner filed in the District Court of Polk County, Texas, action No. 7957 on behalf of Etta DeLoach Sykes and Amos Hayes against Trinity River Authority of Texas. Therein, plaintiffs sought $50,000 actual and $250,000 punitive damages against defendant who had "initiated effective condemnation proceedings but refused to conclude, terminate or discontinue such proceedings resulting in damages to Plaintiffs". In December 1971 the court dismissed the case based upon lack of jurisdiction and collateral estoppel. *580 There was no written agreement between petitioner and Etta DeLoach Sykes as to the compensation petitioner was to receive for his legal efforts. Etta DeLoach Sykes died in 1971. On May 6, 1971, Lake Livingston Washateria, Inc. (Washateria), became a chartered corporation in Texas. The charter was revoked during 1975. Between those years petitioner was a shareholder in Washateria. Small Business Corporation income tax returns were completed for tax years 1971, 1972 and 1973. The 1971 tax return showed a loss of $37,500. Petitioner purchased a Chevrolet Vega in 1971; title was issued in his name. Title to the Vega was never transferred to Washateria. The Vega collided with a truck while petitioner was driving it; that collision demolished the Vega. Petitioner had the Vega towed from the site of the collision by a wrecking service in Livingston, Texas. He replaced the Vega with a 1972 Plymouth. Petitioner on his Federal income tax return for the calendar year 1971 claimed a condemnation loss of $12,500 for "One hundred (100) acres of Farm and Recreation Realty in John Burgess Survey, Polk County, Texas, through Condemnation Without Compensation," and a small business *581 loss of $14,583.33. Respondent disallowed these claimed deductions in their entirety with the following explanations: (a) It is determined that the amount of $12,500.00 claimed as a Condemnation loss on one hundred acres of Farm and Recreation Realty in John Burgess Survey, Polk County, Texas, is not allowable because it has not been established that any deductible loss was sustained during the taxable year. Accordingly, taxable income is increased $12,500.00. (b) It is determined that the amount of $14,583.33 claimed as a loss resulting from the operation of Lake Livingston Washateria, Inc. is not allowable because it has not been established that any deductible loss was sustained during the taxable year. Accordingly, taxable income is increased $14,583.33. OPINION The first issue for decision is whether petitioner is entitled under section 165 to a condemnation loss of $12,500 in the calendar year 1971. In order for a taxpayer to be entitled to a condemnation loss, he must have a prior ownership interest in the land confiscated. Petitioner asserts that he received a vested property interest prior to December 31, 1968, in 100 acres of land located in the John Burgess *582 Survey, Polk County, Texas. He contends that as a result of the donative and compensatory intents of certain relatives, particularly Etta DeLoach Sykes, by oral promise he received a 50 percent interest in those 100 acres of Polk County land. The compensatory nature of the alleged land transfer presumably resulted from petitioner's having rendered legal services to members of the DeLoach family and specifically to Etta DeLoach Sykes. Petitioner argues that he represented those persons as defendants in either condemnation proceeding No. 1115 or No. 1116. Trinity River Authority of Texas filed both law suits as a means of exercising its power of eminent domain on December 20, 1968, in the County Court of Polk County, Texas. Proceeding No. 1115 affected Polk County tract E-56, while No. 1116 concerned tracts E-53 and E-54 in the John Burgess Survey. The County Court judgments directed the Trinity River Authority of Texas to pay the DeLoach family members sums of money as a result of the confiscation of the Polk County lands. However, on June 2, 1970, when judgment was entered in condemnation proceeding No. 1116, a suit contesting the ownership of tracts E-53 and E-54 was pending *583 in the District Court of Polk County. As a result, the County Court judgment for Docket No. 1116 ordered that Trinity River Authority pay the $33,600.35 award to the registry of the County Court for retention until the District Court rendered a final decision. Title was quieted in the District Court action in trespass to try title, No. 7754, captioned Lila King, et al vs. Novella DeLoach Ashley, et al, on November 24, 1970. The heirs of Ben DeLoach, including Etta DeLoach Sykes and Amos Hayes, were awarded by the District Court an undivided 0.1250 interest in tracts E-53 and E-54. Consequently, the County Court award in proceeding No. 1116 became available to the defendants therein, which qualified Etta DeLoach Sykes to receive an interest of approximately $300 in the Polk County property. It is that property interest to which petitioner insists he was entitled. Petitioner asserts that his legal representation of the DeLoach family members in the Texas County Court and District Court cases gave him a 50 percent claim to the 100 acres. Contrary to petitioner's position that he was the attorney of record in those cases, the record in the instant case does not indicate that *584 he assumed that position. Texas Rules of Civil Procedure, Rule 10, defines attorney of record as -- An attorney of record is one who has appeared in the case, as evidenced by his name subscribed to the pleadings or to some agreement of the parties filed in the case; and he shall be considered to have continued as such attorney to the end of the suit in the trial court, unless there is something appearing to the contrary in the record. Petitioner's name was not subscribed to the pleadings or some agreement filed by the parties in proceedings No. 1115, No. 1116, and No. 7754. The only suit in which petitioner acted as the named attorney of record was an action on behalf of Etta DeLoach Sykes and Amos Hayes against Trinity River Authority of Texas filed as docket No. 7957 in the District Court of Polk County on April 12, 1971. That case sought actual and punitive damages against defendant for refusing to conclude, terminate, or discontinue the County Court condemnation proceedings. Proceeding No. 7957 was dismissed by the District Court for lack of jurisdiction. It appears from this *585 record that any rights in property which petitioner might have received by virtue of his rendering legal services as attorney of record to Etta DeLoach Sykes specifically with respect to the April 12, 1971, case necessarily would have arisen after December 31, 1968. Because petitioner claims that his property interest firmly vested before December 31, 1968, any such interest could not have resulted from his legal services with respect to District Court proceeding No. 7957. While petitioner claims that he legally represented Etta DeLoach Sykes and other DeLoach family members in the condemnation proceedings and the action in trespass to try title, there is no confirmatory evidence in the record that he represented in any legal capacity their interests in those suits. The suit to quiet title No. 7754 lists another attorney as the attorney for the DeLoach defendants. Petitioner argues that his property interest attached before December 31, 1968, as a result of an oral promise by Etta DeLoach Sykes to convey the lands. Petitioner concedes that there was no formal written contract between himself and any of the DeLoach family members with respect to the conveyance of acreage in *586 the John Burgess Survey. He points to Etta DeLoach Sykes' signature on the reverse side of the service citation of the suit in the District Court to quiet title No. 7754 as representing a sufficient indication of her intent to convey to petitioner the property in issue. The mere signature of Etta DeLoach Sykes on this document is clearly not sufficient to transfer any property interest to petitioner. Certainly Etta DeLoach Sykes may have signed the service citation for other reasons, such as a designation to the sheriff of receipt of the complaint. The signature alone or even when combined with the contents of the complaint, lacks the attributes of a written contract to transfer a property interest to petitioner. Thus, we conclude that no written contract existed which gave petitioner any interest in the 100 acres of land located in the John Burgess Survey, Polk County, Texas. Even if petitioner had an oral contract with Etta DeLoach Sykes and other DeLoach family members entitling petitioner to an interest in the Polk County tracts, the contract would not be a valid conveyance of real estate. *587 The Texas Statute of Frauds requires a written agreement signed by the person to be charged with that agreement for a valid conveyance of real property. Tex. Bus. & Com. Ann. sec. 26.01 (Vernon 1968). Citing case law based upon Vernon's Annotated Civil Statutes, Article 3995(4), a predecessor of section 26.01, petitioner argues that the Statute of Frauds is "not applicable to a contract for the joint acquisition of an interest in realty by a plaintiff [petitioner herein] and another where part of the money and services in the venture are furnished by the plaintiff." [3]
Texas law requires the presence of the following essential elements for the formation of a joint venture: (1) mutual right of control, (2) community of interest, (3) agreement to share profits as principals, and (4) agreement to share expenses, costs and losses. E.g., Chandler v. Herndon,450 S.W.2d 703 (Tex. Civ. App. 1970); *588 Brown v. Cole,155 Tex. 624, 291 S.W.2d 704 (1956). The record does not reflect facts sufficient to support petitioner's claim that his relationship with Etta DeLoach Sykes had the attributes of a joint venture formed to acquire an interest in realty. Petitioner further asserts that by virtue of his being the attorney for Etta DeLoach Sykes, such a confidential relationship precludes the necessity of complying with the Statute of Frauds. We do not agree with petitioner. The mere existence of a confidential relationship does not excuse noncompliance with the Statute of Frauds. Dairy Queen of Duncanville, Inc. v. O'Quinn,502 S.W.2d 889 (Tex. Civ. App. 1973). We are of the opinion that petitioner did not receive a vested property interest in any Polk County land by virtue of his rendering legal services to any DeLoach family member. Accordingly, petitioner is not entitled to deduct $12,500 on his 1971 income tax return for a loss resulting from the condemnation of land by the Trinity River Authority of Texas. At trial petitioner alternatively argues *589 that he is entitled to deduct in 1971 a loss resulting from a prospective interest in the proceeds paid by the Trinity River Authority of Texas with regard to the condemnation of tracts E-53, E-54, and E-56 in Polk County. Petitioner claims that he included that prospective interest, approximately $300, in his income for calendar years 1967 or 1968. Therefore, petitioner insists that he is entitled to a $300 deduction. Petitioner confirms that he did not file a Federal income tax return for either 1967 or 1968, but without further explanation or production of evidence he refers us to section 6012(a)(1)(A)(i). [4]
*590 A cash basis taxpayer is not entitled to deduct losses of anticipated income not received or reported. Hutcheson v. Commissioner,17 T.C. 14, 19 (1951); Hendricks v. Commissioner,406 F.2d 269, 272 (5th Cir. 1969). In an effort to render this rule inapplicable in the instant case, on brief petitioner refers to his accounting method used for reporting income as a "quasi-accrual" method. He claims that, although unreported, he accounted for the $300 interest by a quasi-accrual method in 1967 or 1968 and is therefore entitled to a $300 loss deduction in 1971. Section 446(c)(1) and (2) permits a taxpayer to report income by either the cash basis method or an accrual method. Section 446(c)(4) and section 1.446-1(c)(1)(iv), Income Tax Regs., allow the usage of a hybrid method in connection with a trade or business as long as income is clearly reflected and the method is consistently used. [5]Caldwell v. Commissioner,202 F.2d 112 (2d Cir. 1953), *591 affg. and modifying in part a Memorandum Opinion of this Court. The record is void of any evidence to indicate that petitioner consistently has used either an accrual method or a quasi-accrual/hybrid method of reporting his income with respect to his law practice. In his 1971 income tax return petitioner listed himself as a cash basis taxpayer. We recognize that the label noted on a taxpayer's tax return is not binding. Aluminum Castings Co. v. Routzahn,282 U.S. 92, 99 (1930); Lincoln Storage Warehouses v. Commissioner,13 T.C. 33, 41 (1949), *592 affd. without discussion on this point 189 F.2d 337 (3rd Cir. 1950). Where the facts so warrant, minor deviations from a strict cash basis accounting method are permissible. Rowe v. Commissioner,7 B.T.A. 903 (1927). But particular income items cannot be reported on an accrual basis unless the taxpayer has a fixed right to receive the income and the amount can be at least approximated. Spring City Foundry Co. v. Commissioner,292 U.S. 182 (1934); Helvering v. Enright's Estate,312 U.S. 636 (1941). This record does not show that petitioner had a fixed right to receive $300 as a prospective interest in the proceeds paid by Trinity River Authority with regard to the condemnation of the Polk County land. Petitioner failed to present sufficient evidence to support his opinion that he had such a definite right. Petitioner has not shown that in 1971 he was not a cash basis taxpayer, nor alternatively, that he was on the cash basis and was justified in making minor deviations therefrom by reporting a certain item on an accrual method of accounting. We conclude that petitioner was a cash basis taxpayer in 1971. *593 At best any claim he might have to the $300 loss arises because of promised but unpaid salary. A failure to realize anticipated income is not equivalent to a loss. Marks v. Commissioner,390 F.2d 598 (9th Cir. 1968), affg. a Memorandum Opinion of this Court. Therefore petitioner is not entitled to a $300 loss deduction resulting from a later inability to collect income prospective in nature and previously unreported. The second issue concerns whether petitioner is entitled to a calendar year 1971 loss of $14,583.33 from the operation of Lake Livingston Washateria, Inc.Washateria became a chartered corporation in Texas on May 6, 1971. Petitioner contendds that a proper section 1372 subchapter S election was made by the company on May 6, 1971. [6] Respondent disagrees and submits that the election was made on March 6, 1971, two months before the actual incorporation of Washateria. Petitioner has the burden of proving that respondent is incorrect. *594 The record includes conflicting evidence as to the correct date of the purported small business corporation election by the Washateria shareholders. The 1971 income tax return completed for Washateria shows the small business corporation election date as March 6, 1971, two months before incorporation. Washateria's 1972 and 1973 income tax returns indicate the election date as May 6, 1971, the date of incorporation. Petitioner testified that the election date appearing on the 1971 tax return was a typographical error and that May 6, 1971, as shown on the 1972 and 1973 tax returns, is correct. Petitioner advances the position that even if the small business corporation election was made on March 6, 1971, its effective date was deferred and rendered binding under Texas law on May 6, 1971, the date of Washateria's legal incorporation. A basic tenet of Federal tax law was stated in Burnet v. Harmel,287 U.S. 103, 110 (1932): Here we are concerned only with the meaning and application of a statute enacted by Congress, in the exercise of its plenary power under the Constitution, to tax income. The exertion of the power is not subject to state control. It is the *595 will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nationwide scheme of taxation. * * * State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law. * * * Neither has Congress expressly nor impliedly suggested that the election of small business corporation status depends on state law. Petitioner's argument is without merit. If March 6, 1971, was the date on which shareholders consented to treat Washateria as a small busines corporation, this case would be similar to that of Frentz v. Commissioner,44 T.C. 485 (1965), affd. without discussion, 375 F.2d 662 (6th Cir. 1967). There the taxpayers acquired the stock of Ohio Valley Broadcasting, Inc., a small business corporation within the meaning of section 1371(b). [7] Upon the acquisition of the Ohio Valley stock, the taxpayers consented to the existing subchapter S election in order to keep that election in effect. The taxpayers intended to dissolve Ohio Valley *596 and to form a new corporation, Kentuckiana Broadcasting, Inc., to operate their radio station. Moreover, the taxpayers planned for Kentuckiana to qualify as an electing small business corporation. The design called for Kentuckiana to commence operation on November 1, 1959, with the first fiscal year beginning thereon. Within the first month of the first anticipated fiscal year, a subchapter S election was made and all shareholder consents were filed. However, the Articles of Incorporation were not filed and the charter was not issued until Janury 11, 1960, about six weeks after the filing of the small business corporation election. We held that the strict language of section 1372 requires the business to assume formal corporate status before or on the date of filing the small business corporation election. Because or began its first *597 tax year as a corporation or begin its first tax year until January 1960, the purported subchapter S election by the taxpayers was invalid and void. In the instant case the validity of the purported small business corporation election is further unsupportable. Section 1372(a) requires that all shareholders of the electing corporation consent in writing to the subchapter S election. Neither the shareholder consent Form 2553 nor a copy thereof was entered into evidence. Nor is there other evidence sufficiently convincing that all shareholders consented to the election within the period prescribed by section 1371(a). Therefore we conclude that Washateria was not a valid small business corporation within the meaning of section 1371(b) in 1971.
Even if Washateria were a subchapter S corporation within the meaning of section 1371(b), the loss would not be deductible by petitioner. Petitioner claims that he became a shareholder of Washateria in 1971 and that his contribution to capital consisted of cash, a 1971 Vega with a cost basis of $2,929.95, and three-quarters of his 50 percent interest in the 100 acres of land located in the John Burgess Survey, Polk County, Texas. The 1971 *598 income tax return completed for Washateria does not explain the components comprising the corporate net loss of $37,500, of which petitioner claimed $14,583.33 as his share. Yet petitioner's brief coupled with his testimony indicates that the entire $37,500 corporate loss was attributable to the condemnation of the Polk County property. The facts control whether a taxpayer has made a valid property transfer effective for Federal income tax purposes. Wilson v. Commissioner,560 F.2d 687, 690-691 (5th Cir. 1977), affg. a Memorandum Opinion of this Court. Because we have already concluded that petitioner had no vested interest in any of the lands in Polk County, and alleged transfer of such property to the corporation, although evidenced by a document entitled "Quit-claim deed", would be invalid and without effect for Federal income tax purposes. Consequently, the $14,583.33 loss is not deductible by petitioner. Petitioner argues that respondent failed to timely contest the claimed loss attributable to the operation of Washateria. This argument is without merit. Section 6501(a) and (b) provide for three years from the date of the filing of the income tax *599 return for assessment of the tax. For this purpose, if the return is actually filed prior to the final date provided by law, the filing date is considered to be the last day allowable for filing of such return. [8] In the instant case petitioner's income tax return for calendar year 1971 was signed on March 1, 1972, and it subsequently was filed.Respondent mailed the notice of deficiency on January 22, 1975, well within the allowable three-year period. *600 On brief petitioner alternatively argues that if Washateria were instead a joint venture, the loss would be allowed to each venturer. However, we refrain from considering that proposed situation since the argument was not timely raised in the pleadings. See McMaster v. Commissioner,69 T.C. 952, 956 (1978); Frentz,supra at 490-491; Molbreak v. Commissioner,61 T.C. 382, 393 (1973), affd. 509 F.2d 616 (7th Cir. 1975). The final issue for decision is whether any part of the deficiency in petitioner's income tax for calendar year 1971 was due to negligence or intentional disregard of the rules and regulations under section 6653(a). Respondent's determination in the notice of deficiency that a portion of an underpayment of taxes is due to negligence or intentional disregard of rules and regulations is presumptively correct, and the taxpayer has the burden of providing that the levying of the addition to tax is erroneous. Courtney v. Commissioner,28 T.C. 658, 669 (1957); Marcello v. Commissioner,380 F.2d 499, 506 (5th Cir. 1967), *601 affg. in part and remanding in part a Memorandum Opinion of this Court. We conclude on the basis of this record that petitioner has failed to carry this burden. The record does not show that adequate records of the interest petitioner held in Washateria or the income or deductions of that entity for 1971 were maintained by petitioner even though petitioner claimed a loss from the operation. In fact petitioner did not enter into evidence the records, if any, that he maintained with respect to the condemnation loss. In our view petitioner has failed to show error in respondent's determination of an addition to tax under section 6653(a). Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue. ↩
2. At the trial petitioner filed an amended petition alleging error in the disallowance of itemized deductions for medical expenses, taxes, and contributions and a theft loss totaling $706.66. In lieu of these claimed itemized deductions respondent allowed a standard deduction of $1,500. On brief petitioner states that the disallowance of the itemized deductions is not in issue. The amended petition also alleged that petitioner was entitled to a casualty loss because of an automobile accident which demolished a Vega automobile. At the trial petitioner offered no evidence as to the year of the accident or any other information with respect to the alleged casualty loss. Petitioner does not mention this alleged loss on brief, and we assume petitioner has abandoned this claimed loss. If he has not abandoned any such claimed loss, clearly on this record he has failed to prove that he had any casualty loss in connection with a Vega automobile in the calendar year 1971.↩
3. Petitioner cites in support of this contention De Proy v. Progakis,259 S.W. 620 (Tex. Civ. App. 1923); Wood v. Gulf Production Co.,100 S.W.2d 412↩ (Tex. Civ. App. 1936).
4. Section 6012(a)(1)(A)(i) provides: SEC. 6012.PERSONS REQUIRED TO MAKE RETURNS OF INCOME. (a) General Rule. -- Returns with respect to income taxes under subtitle A shall be made by the following: (1)(A) Every individual having for the taxable year a gross income of $1,000 or more, except that a return shall not be required of an individual (other than an individual described in subparagraph (C)) -- (i) who is not married (determined by applying section 143), is not a surviving spouse (as defined in section 2(a)), and for the taxable year has a gross income of less than $3,300,↩
5. Section 446(c) provides: (c) Permissible Methods. -- Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting -- (1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.↩
6. Section 1372(a) and (c) provide: SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION.
(a) Eligibility. -- Except as provided in subsection (f), any small business corporation may elect, in accordance with the provisions of this section, not to be subject to the taxes imposed by this chapter. Such election shall be valid only if all persons who are shareholders in such corporation -- (1) on the first day of the first taxable year for which such election is effective, if such election is made on or before such first day, or (2) on the day on which the election is made, if the election is made after such first day, consent to such election. * * *
(c) Where and How Made. -- (1) In general. -- An election under subsection (a) may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any time during the month preceding such first month. Such election shall be made in such manner as the Secretary or his delegate shall prescribe by regulations. (2) Taxable years beginning before date of enactment. -- An election may be made under subsection (a) by a small business corporation for its first taxable year which begins after December 31, 1957, and on or before the date of the enactment of this subchapter, and ends after such date at any time -- (A) within the 90-day period beginning on the day after the date of the enactment of this subchapter, or (B) if its taxable year ends within such 90-day period, before the close of such taxable year. An election may be made pursuant to this paragraph only if the small business corporation has been a small business corporation (as defined in section 1371(a)↩) on each day after the date of the enactment of this subchapter and before the day of such election.
7. Section 1371(b) releads as follows: (b) Electing Small Business Corporation.--For purposes of this subchapter, the term "electing small business corporation" means, with respect to any taxable year, a small business corporation which has made an election under section 1372(a) which, under section 1372↩, is in effect for such taxable year.
8. SEC. 6501. LIMITATION ON ASSESSMENT AND COLLECTION. (a) General Rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. (b) Time Return Deemed Filed.-- (1) Early return.--For purposes of this section, a return of tax imposed by this title, except tax imposed by chapter 3, 21 or 24, filed before the last day prescribed by law or by regulations promulgated pursuant to law for the filing thereof, shall be considered as filed on such last day.↩