DONALD E. DENMAN and PAMELA DENMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Denman v. Commissioner
Docket No. 11919-79.
United States Tax Court
T.C. Memo 1981-332; 1981 Tax Ct. Memo LEXIS 413; 42 T.C.M. (CCH) 249; T.C.M. (RIA) 81332; June 25, 1981. *413 Noel C. Ice and Robert A. Watson, for the petitioners. William P. Hardeman, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $ 23,754.26 in petitioners' Federal income tax for 1975 and an addition to tax in the amount of $ 1,187.71 under section 6653(a). [1] Due to concessions by the parties, the remaining issues for decision are: 1. Whether payments of $ 115,358.27 by a partnership on a floor plan account should be included in the partnership's gross income. 2. Whether petitioners are liable for an addition to tax under section 6653(a). FINDINGS OF FACT Petitioners Donald E. Denman and Pamela Denman, husband and wife, were legal residents of Keller, Texas, when they filed their petition. They timely filed a joint Federal income tax return for 1975 with the Internal Revenue Service Center, Austin, Texas. A partnership return was filed for the taxable period January 1, 1975 through July 1, 1975, in the name *414 of Denman and Denman, AA Wrecking Service (hereinafter the partnership) with the Internal Revenue Service Center, Austin, Texas. Petitioners were 30-percent partners in the partnership which was engaged in the business of selling used pickup trucks and automobiles. After experiencing increasing financial difficulties, the partnership went out of business at the end of June 1975. The partnership entered into a floor plan arrangement with a local bank to finance its acquisitions of trucks and automobiles which it later resold to customers. Under the arrangement, the bank established a line of credit for the partnership and gave the partnership blank drafts to be used to purchase vehicles. When a draft was presented to the bank for payment, the bank would credit the floor plan account and either pay off the draft directly or deposit that amount in the partnership's checking account, in which case the draft would be paid off by a check drawn upon the partnership's account. When the partnership sold the vehicle, the partnership usually either deposited the proceeds into its checking account and then issued a check to the floor plan account, or delivered the proceeds directly to *415 the bank for credit on the floor plan account. The payments on the floor plan account which were made directly from proceeds of truck and auto sales usually represented the cost of purchasing the vehicles which had been sold. Based upon his examination of the partnerhip's checking account and floor plan transactions, respondent determined the following adjustments to the partnership's income: 1. Sales
[1] $ 86,633.99 2. Purchases
[1] (1,527.46)
3. Rent
[1] 1,040.00 4. Unidentified payments on floor plan
115,358.27 $ 201,504.80 Respondent explained the fourth item as follows: It is determined that your Floor Plan has unidentified credits in the amount of $ 115,358.27. These credits would constitute income to you. Accordingly, ordinary income is increased $ 115,358.27. Based on the increase in partnership income, respondent determined that petitioners underreported their distributive share, resulting in an income tax deficiency in the amount of $ 23,754.26. *416 Due to concessions by both parties, the only adjustment of partnership income determined by respondent which remains in dispute is the $ 115,358.27 "unidentified payments on floor plan." OPINION At least until the date of trial, respondent contended that the floor plan payments in question, which were paid directly from sales proceeds rather than through the partnership's checking account, should be included in the partnership's income. Petitioners maintain that these payments do not represent taxable incme. We agree with petitioners. It is true that the payments, as proceeds from truck and auto sales, increased gross income. Nonetheless, as respondent has stipulated and conceded in his brief, the payments also represented the cost of purchasing the trucks and autos. Consequently, the payments were offset by an equal amount of cost of goods sold. The result of this addition to gross income and concurrent, equal cost-of-goods-sold deduction is that net income was not affected. Indeed, respondent has stated in his brief that-- It is elementary that the funds, which are income from the sale of vehicles, when applied at the bank to satisfy the floor plan loans used to purchase *417 the vehicles, represent cost of goods sold * * *. Therefore, respondent erred in determining that the $ 115,358.27 payments to the floor plan account increased the partnership's taxable income by that amount. Apparently, respondent now seeks to increase the partnership's income on the theory that the $ 115,358.27 in cash payments to the floor plan account indicate that the partnership had additional unreported auto sales. Respondent reasons that the partnership, therefore, must have received a profit on each of the transactions which gave rise to the $ 115,358.27 used to make the payments on the floor plan account. Respondent concludes that this alleged profit was neither deposited to the checking account nor paid on the floor plan account and thus constituted additional unreported taxable income. At trial and in their brief, petitioners argued that the issue of whether the partnership received unreported profit was not properly before this Court because it was not raised in the notice of deficiency or the pleadings. Alternatively, petitioners argue that if this issue has been properly pleaded, then respondent bears the burden of proof with respect to this issue, and that *418 respondent failed to carry that burden. We think it clear that respondent is now relying on a theory which differs from that advanced in his notice of deficiency and pleadings. His prior theory was that the $ 115,358.27 payments to the floor plan account constituted taxable income. We have rejected that argument, and respondent's current theory is that those floor plan account payments indicate that auto sales occurred on which the partnership received unreported profit above and beyond the floor plan account payments. This Court has held on numerous occasions that it will not consider issues which have not been properly pleaded. Markwardt v. Commissioner, 64 T.C. 989, 997 (1975); Estate of Mandels v. Commissioner, 64 T.C. 61, 73 (1975); Estate of Horvath v. Commissioner, 59 T.C. 551, 556 (1973); Frentz v. Commissioner, 44 T.C. 485, 491 (1965), affd. per order 375 F.2d 662 (6th Cir. 1967). Respondent may rely on his new theory even though it is not contained in his notice of deficiency or answer only if he has provided petitioners with fair warning of his intent to proceed under that theory so that *419 petitioners are not surprised or disadvantaged.Schuster's Express, Inc. v. Commissioner, 66 T.C. 588, 593 (1976), affd. 562 F.2d 39 (2d Cir. 1977); Markwardt v. Commissioner, supra; Rule 31(a), Tax Court Rules of Practice and Procedure.
We need not decide whether petitioners have been surprised and disadvantages so that respondent may not rely on his new theory. Assuming, arguendo, that respondent may rely on his new theory, we find that he has the burden of proof with respect to that theory, see Schuster's Express, Inc. v. Commissioner, supra; Tauber v. Commissioner, 24 T.C. 179, 185 (1955); Rule 142(a), Tax Court Rules of Practice and Procedure, and that he has failed to meet that burden. Although respondent contends that the partnership received additional unreported profit, he has failed to introduce any evidence to show that such profit was realized and, if so, the amount thereof. Petitioner has testified that all proceeds from auto sales were deposited either in the partnership's checking account or applied directly on the floor plan account. Respondent has failed to rebut this testimony, *420 arguing only that the mere existence of the $ 115,358.27 floor plan account payments proves the existence of some amount of unreported profit. Although we recognize that the floor plan account payments indicate that auto sales were made, we do not think that this evidence, without more, is sufficient to infer that the partnership realized profits which it failed to report. First, the partnership was suffering from inefficient operation and other financial problems, and went out of business midway through the year. A combination of inefficiency, high interest rates charged on the floor plan, and a small margin of profit on sales apparently led to the partnership's failure. We think the possibility that the partnership realized a net loss from the sales represented by the $ 115,358.27 payments on the floor plan account is as likely as the possibility that the partnership realized a net profit from those sales. In addition, there is no other evidence in the record contradicting petitioners' testimony that all sales proceeds either were deposited in the checking account or applied directly on the floor plan account. Thus, no substantial evidence exists to support respondent's contention *421 that the partnership received income in addition to that reflected by the checking account and floor plan account transactions. Even if we assumed tha the partnership received some unreported profit from the sales represented by the $ 115,358.27 credit on the floor plan account, respondent has not shown the amount of the profit. Rather, respondent has merely hypothesized that the partnership may have had a markup of 20 percent, 35 percent, or 125 percent. This clearly failed to satisfy respondent's burden of proof on this issue. The final issue for our determination is whether petitioners are liable for the negligence penalty under section 6653(a). [2] Petitioners bear the burden of proof on this issue, Rule 142(a), Tax Court Rules of Practice and Procedure, and they have failed to introduce any evidence to show that the underpayments were not due to negligence or intentional disregard of the rules. Therefore, we sustain respondent's determination that petitioners are liable for the negligence penalty to the extent of the underpayments which they have conceded. *422 To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
1. Petitioners have agreed to items 2 and 3 and to an increase to sales of $ 17,832.68. Respondent has agreed that the adjustment of sales was excessive to the extent of $ 68,801.31.↩
2. SEC. 6653.FAILURE TO PAY TAX. (a) Negligence or Internal Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩